**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LULULEMON ATHLETICA CANADA INC., <br><br>         Plaintiff, <br><br> v. <br><br> THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," <br><br>         Defendants. | Case No. 21-cv-06761 |

## COMPLAINT

Plaintiff Lululemon Athletica Canada Inc. ("Lululemon") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

### I. JURISDICTION AND VENUE

1.     This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)–(b) and 28 U.S.C. § 1331.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales

---

[1] The e-commerce store urls are listed on Schedule A hereto under the Online Marketplaces and Domain Names.

to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold products using infringing and counterfeit versions of Lululemon's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Lululemon substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Lululemon to combat e-commerce store operators who trade upon Lululemon's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products using infringing and counterfeit versions of Lululemon's federally registered trademarks (the "Counterfeit Lululemon Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale and selling Counterfeit Lululemon Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers, establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Lululemon is forced to file these actions to combat Defendants' counterfeiting of its registered Lululemon trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Lululemon Products over the Internet. Lululemon has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**Plaintiff**

4.      Lululemon is a yoga-inspired athletic apparel company founded in Vancouver, British Columbia, Canada (where it continues to be based) in 1998 by Dennis "Chip" Wilson that creates unique athletic apparel and accessories.  Lululemon sells many high-quality products, including, but not limited to, clothing and apparel such as shirts, jackets, sweat pants, yoga pants, tank tops, sweatshirts, sports bras, shorts, caps and headbands, as well as products other than clothing such as yoga mats, bags, and accessories, and also provides branded retail store services, including over the Internet, to carefully control customer experiences and further enhance the appeal of the Lululemon brand (these and other genuine Lululemon branded products are collectively referred to herein as the "Lululemon Products").  While Lululemon has its roots in yoga, Lululemon Products are increasingly used for other athletic and casual lifestyle pursuits, such as running and general fitness.  Lululemon works with local athletes and fitness practitioners to enhance Lululemon brand awareness.  Lululemon Products are designed to offer performance, fit and comfort while incorporating both function and style.  Lululemon's heritage of combining performance and style distinctly positions Lululemon to address the needs of athletes, as well as a growing core of consumers who desire everyday casual wear that is consistent with their active lifestyles.

5.      Since its founding in 1998, the unique and highly desirable Lululemon Products have led to enormous growth and financial success for Lululemon.  In 2016, Lululemon reported revenue of $2.34 Billion and over $300 Million in net income.  The company went public on the NASDAQ stock exchange in 2007, and Lululemon's current market capitalization exceeds $8 Billion.

6.     The root of this financial success lies in Lululemon's ability to consistently deliver highly desirable Lululemon Products.  Lululemon Products have become enormously popular and even iconic, driven by Lululemon's arduous quality standards and innovative design. Among the purchasing public, genuine Lululemon Products are instantly recognizable as such. In the United States and around the world, the Lululemon brand has come to symbolize high quality, and Lululemon Products are among the most recognizable athletic apparel in the world.

7.     The prestige of the Lululemon brand is further enhanced by careful distribution of Lululemon Products using a vertical model in which Lululemon provides retail store services to operate its own Lululemon branded stores.  Lululemon Products are sold exclusively through Lululemon's 351 distinctive retail stores, including nine in Chicago (one of which is located in the exclusive Michigan Avenue shopping district), as well as through certified partners that offer Lululemon Products in premium yoga studios, gyms, and/or wellness centers.  Lululemon's retail store services are provided through operation of these branded stores.  Lululemon's vertical retail strategy allows Lululemon to interact more directly with its customers and to tightly control the consumer's retail experience.

8.     Providing genuine Lululemon branded retail store services over the Internet to sell genuine Lululemon Products is an important part of Lululemon's business strategy.  Since at least 2009, Lululemon has operated a website at <Lululemon.com> where it promotes and sells genuine Lululemon Products.  Direct to consumer net revenue increased $51.8 million, or 13%, to $453.3 million in fiscal 2016 compared to fiscal 2015, primarily as a result of increased traffic on Lululemon's e-commerce websites.  The lululemon.com website features proprietary content, images and designs exclusive to Lululemon.

9.     Lululemon's cultural and community-based business approach has provided Lululemon with a competitive advantage that is responsible for the brand's strong financial performance.  In the years 2004 – 2016, Lululemon's net revenue increased from $40 million annually to $2.34 billion, an extraordinary growth of over 3,000% during challenging economic times.  Lululemon's growth and success have not gone unnoticed.  The brand has earned numerous industry awards and accolades.  As an example, Lululemon was named International Retailer of the Year by the National Retail Foundation in 2012.

10.     Lululemon's trademarks are critical to its business.  Lululemon is the owner of and has widely promoted several trademarks which have earned substantial fame and considerable goodwill among the public.  Lululemon has used its trademarks (collectively, the "LULULEMON Trademarks") on and in association with its entire line of athletic apparel and accessories, as well as in connection with packaging, retail store services (including nine retail stores in Chicago), and online e-commerce.  Lululemon Products always include at least one of the LULULEMON Trademarks.  Often several LULULEMON Trademarks are displayed on a single Lululemon Product.  Lululemon incorporates a variety of distinctive marks in its various Lululemon Products.  Consequently, the United States Patent and Trademark Office has granted Lululemon multiple federal registrations for the LULULEMON Trademarks.  Lululemon uses the LULULEMON Trademarks in connection with the marketing of its Lululemon Products. The LULULEMON Trademarks, including, but not limited to the registered trademarks listed below, are famous and valuable assets of Lululemon.

| Registration No. | Trademark | Goods and Services |
|---|---|---|
| 4,391,115 | LULULEMON | Clothing, namely, t-shirts, shirts, tank tops, sweatshirts, sweaters, jerseys, jumpers, pants, sweatpants, shorts, skirts, dresses, jackets, coats, vests, |

| Registration No. | Trademark | Goods and Services |
|---|---|---|
| | | underwear, socks, warm-up suits, bodysuits, leotards, tights, leggings, leg warmers; headwear, namely, hats, caps, toques, visors, headbands, bandanas; clothing accessories, namely, belts, scarves, shawls, shoulder wraps, arm warmers, mittens, gloves; sandals in class 025. |
| 3,990,179 | LULULEMON | Retail store services featuring clothing, apparel, accessories, headwear, socks, yoga equipment, athletic equipment, bags, backpacks, tote bags, pre-recorded DVDs, featuring topics relating to yoga instruction, yoga philosophy, exercise and health living; online retail store services featuring clothing, apparel, accessories, headwear, socks, yoga equipment, athletic equipment, bags, backpacks, tote bags, pre-recorded DVDs, featuring topics relating to yoga instruction, yoga philosophy, exercise and health living in class 035. |
| 3,985,876 | LULULEMON ATHLETICA | Retail store services featuring clothing, apparel, accessories, headwear, socks, yoga equipment, athletic equipment, bags, backpacks, tote bags, pre-recorded DVDs, featuring topics relating to yoga instruction, yoga philosophy, exercise and health living in class 035. |
| 2,607,811 | lululemon athletica | Clothing, namely, pants, shirts, t-shirts, shorts, sweatshirts, sweatpants, socks, jackets, coats, hats in class 025. |
| 3,985,881 | lululemon athletica | Retail store services featuring clothing, apparel, accessories, headwear, socks, yoga equipment, athletic equipment, bags, backpacks, tote bags, pre-recorded DVDs, featuring topics relating to yoga instruction, yoga |

| Registration No. | Trademark | Goods and Services |
|---|---|---|
| | | philosophy, exercise and health living in class 035. |
| 2,460,180 |  | Clothing, namely, pants, shirts, t-shirts, shorts, sweatshirts, sweatpants, socks, jackets, coats, hats in class 025. |
| 3,985,877 |  | Retail store services featuring clothing, apparel, accessories, headwear, socks, yoga equipment, athletic equipment, bags, backpacks, tote bags, pre-recorded DVDs, featuring topics relating to yoga instruction, yoga philosophy, exercise and health living; online retail store services featuring clothing, apparel, accessories, headwear, socks, yoga equipment, athletic equipment, bags, backpacks, tote bags, pre-recorded DVDs, featuring topics relating to yoga instruction, yoga philosophy, exercise and health living in class 035. |
| 3,024,374 | LUON | Clothing, namely, T-shirts, shirts, pants, shorts, sweatshirts, sweatpants, tank tops, jackets, coats and hats for men, women and children in class 025. |
| 3,116,371 | SILVERESCENT | Clothing, namely T-shirts, shirts, pants, shorts, skirts, dresses, sweatshirts, sweatpants, tank tops, underwear, socks, jackets, coats, headwear, footwear in class 025. |
| 3,272,013 | VITASEA | Dresses; Pants; Shirts; Skirts; Sweat pants; Sweat shirts; T-shirts; Tank tops; Underwear in class 025. |
| 3,976,389 | LUXTREME | Body suits; Jackets; Leggings; Pants; Shirts; Shorts; Skirts; Tank tops; Tights in class 025. |

| Registration No. | Trademark | Goods and Services |
|---|---|---|
| 3,978,257 | GROOVE | Yoga pants in class 025. |
| 3,978,258 | GROOVE PANT | Yoga pants in class 025. |
| 4,033,939 | SET-MY-PONYTAIL-FREE | Clothing, namely, hooded sweatshirts, jackets and coats; Headwear, namely, hats and caps in class 025. |
| 4,214,049 | WUNDER UNDER | Clothing, namely crop pants, pants, shorts, tights, leggings in class 025. |
| 4,214,052 | POWER Y | Clothing, namely, tank tops, bras in class 025. |
| 4,219,265 | RULU | Clothing, namely, T-shirts, shirts, pants, shorts, sweatshirts, sweatpants, tank tops, underwear, socks, jackets, coats and hats for men, women and children in class 025. |
| 4,234,113 | DEFINE JACKET | Clothing, namely, jackets in class 025. |
| 4,333,759 | SCUBA | Clothing, namely, hooded sweatshirts, jackets, coats, tops in class 025. |
| 4,823,727 | LOCK 'EM DOWN | Clothing, namely, underwear in class 025. |
| 4,832,086 | NAKEDSEAM | Athletic apparel, namely, pants, shorts, crops, leggings, shirts, t-shirts, tank tops, jackets, and outerwear, namely, coats in class 025. |
| 4,832,139 | CUFFINS | Clothing, namely, jackets, sweatshirts, shirts, sweaters in class 025. |
| 4,846,298 | LUXCHANGE | Apparel, namely, jackets, coats, parkas, and sweatshirts in class 025. |
| 4,905,437 | PACE BREAKER | Clothing, namely, shorts and underwear in class 025. |
| 4,964,908 | FULL-ON | Athletic apparel, namely, pants, shorts, crop pants, tights and leggings all for men, women and children; all of the |

| Registration No. | Trademark | Goods and Services |
|---|---|---|
|  |  | foregoing expressly excluding cosmetics in class 025. |
| 5,040,370 | ALL THE RIGHT PLACES | Clothing, namely, crop pants, pants, shorts, tights, leggings in class 025. |
| 5,041,355 | BLOCK-IT POCKET | Clothing, namely, pants, sweatpants, shorts in class 025. |
| 5,413,086 | SWIFTLY | Clothing, namely, t-shirts, shirts, tank tops, sweatshirts, sweaters; clothing accessories, namely, arm warmers and scarves; headwear, namely, headbands in class 025. |
| 5,617,645 | TIGHT STUFF | Clothing, namely, pants, tights, and leggings in class 025. |
| 5,666,869 | NULU | Clothing, namely, shirts, tank tops, pants, sweatpants, shorts, dresses, jackets, bodysuits, leotards, tights, bras in class 025. |
| 5,751,880 | SERIOUSLY LIGHT | Clothing, namely, t-shirts, shirts, tank tops and headbands in class 025. |
| 4,897,183 |  | Hooded sweat shirts; Jackets; Coats in class 025. |

| Registration No. | Trademark | Goods and Services |
|---|---|---|
| 4,986,083 |  | Clothing, namely, tights, pants in class 025. |
| 5,393,854 |  | Clothing, namely, tights, pants, leggings in class 025. |

11.     The above U.S. registrations for the LULULEMON Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the LULULEMON Trademarks constitute *prima facie* evidence of their validity and of Lululemon's exclusive right to use the LULULEMON Trademarks pursuant to 15 U.S.C. § 1057(b). The LULULEMON Trademarks have been used exclusively and continuously by Lululemon and its subsidiaries, some since at least as early as 1998, and have never been abandoned. Attached hereto as **Exhibit 1** are true and correct copies of the United States Registration Certificates for the LULULEMON Trademarks included in the above table.

12.     The LULULEMON Trademarks are exclusive to Lululemon, and are displayed extensively on Lululemon Products and in Lululemon's marketing and promotional materials. Lululemon Products have long been among the most popular athletic and yoga apparel in the world and have been extensively promoted at great expense. In fact, Lululemon expends

millions of dollars annually promoting and marketing the LULULEMON Trademarks. Lululemon Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs and renown as desired luxury items. Because of these and other factors, the Lululemon name and the LULULEMON Trademarks have become famous throughout the United States.

13. The LULULEMON Trademarks are distinctive when applied to the Lululemon Products, signifying to the purchaser that the products come from Lululemon and are consistent with Lululemon's quality standards. Whether Lululemon manufactures the products itself or licenses others to do so, Lululemon has ensured that products bearing the LULULEMON Trademarks are manufactured to the highest quality standards, and likewise ensures that the provision of retail store services under the LULULEMON Trademarks is consistent with the highest quality standards. The LULULEMON Trademarks have achieved tremendous fame and recognition which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with the LULULEMON Trademarks is of incalculable and inestimable value to Lululemon.

**The Defendants**

14. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Lululemon. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

15.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Lululemon to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Lululemon will take appropriate steps to amend the Complaint.

### IV. DEFENDANTS' UNLAWFUL CONDUCT

16.     The success of the Lululemon brand has resulted in its significant counterfeiting. Consequently, Lululemon has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Lululemon has identified numerous fully interactive, e-commerce stores, including those operating under the Seller Aliases, which were offering for sale and/or selling Counterfeit Lululemon Products on online marketplace platforms such as Amazon, eBay, AliExpress, Alibaba, Wish.com, and DHgate, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. According to U.S. Customs and Border Protection (CBP), most counterfeit products now come through international mail and express courier services (as opposed to containers) due to increased sales from offshore online counterfeiters. *The Counterfeit Silk Road: Impact of Counterfeit Consumer Products Smuggled Into the United States* prepared for The Buy Safe America Coalition by John Dunham & Associates (**Exhibit 2**). The bulk of counterfeit products to the United States "come from China and its dependent territories," accounting for over 90.6% of all cargo with intellectual property rights (IPR) violations. *Id*. Of the $1.23 billion in total IPR violations intercepted, $1.12 billion was from China. *Id*. Counterfeit and

pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue. *Id.*

17.     Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 Nw. J. Int'l L. & Bus. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 4** and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary.  Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts.  **Exhibit 4** at p. 22.  Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated.  **Exhibit 4** at p. 39.  Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 3** at 186-187.

18.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Counterfeit Lululemon Products to residents of Illinois.

19. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases look sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from Lululemon's website or another authorized retailer. Lululemon has not licensed or authorized Defendants to use any of the LULULEMON Trademarks, and none of the Defendants are authorized retailers of genuine Lululemon Products.

20. Many Defendants also deceive unknowing consumers by using the LULULEMON Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Lululemon products. Other e-commerce stores operating under the Seller Aliases omit using the LULULEMON Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Lululemon Products.

21. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

22. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Lululemon Products.

14

Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

23.     Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Counterfeit Lululemon Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Lululemon Products were manufactured by and come from a common source and that Defendants are interrelated.

24.     E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

25.     Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Lululemon's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Lululemon. Indeed, analysis of

financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

26. Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Lululemon Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Lululemon, have jointly and severally, knowingly and willfully used and continue to use the LULULEMON Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Lululemon Products into the United States and Illinois over the Internet.

27. Defendants' unauthorized use of the LULULEMON Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Lululemon Products, including the sale of Counterfeit Lululemon Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Lululemon.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

28. Lululemon hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

29. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered LULULEMON Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The LULULEMON Trademarks are highly distinctive marks.

Consumers have come to expect the highest quality from the Lululemon Products offered, sold or marketed under the LULULEMON Trademarks.

30.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the LULULEMON Trademarks without Lululemon's permission.

31.     Lululemon is the exclusive owner of the LULULEMON Trademarks. Lululemon's United States Registrations for the LULULEMON Trademarks (Exhibit 1) are in full force and effect.  Upon information and belief, Defendants have knowledge of Lululemon's rights in the LULULEMON Trademarks, and are willfully infringing and intentionally using counterfeits of the LULULEMON Trademarks.  Defendants' willful, intentional and unauthorized use of the LULULEMON Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Lululemon Products among the general public.

32.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

33.     Lululemon has no adequate remedy at law, and if Defendants' actions are not enjoined, Lululemon will continue to suffer irreparable harm to its reputation and the goodwill of its well-known LULULEMON Trademarks.

34.     The injuries and damages sustained by Lululemon have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Lululemon Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

35.     Lululemon hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

36.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Lululemon Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Lululemon or the origin, sponsorship, or approval of Defendants' Counterfeit Lululemon Products by Lululemon.

37.     By using the LULULEMON Trademarks in connection with the sale of Counterfeit Lululemon Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Lululemon Products.

38.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Lululemon Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

39.     Lululemon has no adequate remedy at law and, if Defendants' actions are not enjoined, Lululemon will continue to suffer irreparable harm to its reputation and the goodwill of its Lululemon brand.

## PRAYER FOR RELIEF

WHEREFORE, Lululemon prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

18

a.  using the LULULEMON Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Lululemon product or is not authorized by Lululemon to be sold in connection with the LULULEMON Trademarks;

b.  passing off, inducing, or enabling others to sell or pass off any product as a genuine Lululemon product or any other product produced by Lululemon that is not Lululemon's or not produced under the authorization, control, or supervision of Lululemon and approved by Lululemon for sale under the LULULEMON Trademarks;

c.  committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Lululemon Products are those sold under the authorization, control, or supervision of Lululemon, or are sponsored by, approved by, or otherwise connected with Lululemon;

d.  further infringing the LULULEMON Trademarks and damaging Lululemon's goodwill; and

e.  manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Lululemon, nor authorized by Lululemon to be sold or offered for sale, and which bear any of Lululemon's trademarks, including the LULULEMON Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

19

2) Entry of an Order that, at Lululemon's choosing, the registrant of the Domain Names shall be changed from the current registrant to Lululemon, and that the domain name registries for the Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall unlock and change the registrar of record for the Domain Names to a registrar of Lululemon's selection, and that the domain name registrars, including, but not limited to, GoDaddy Operating Company, LLC ("GoDaddy"), Name.com, PDR LTD. d/b/a PublicDomainRegistry.com ("PDR"), and Namecheap Inc. ("Namecheap"), shall take any steps necessary to transfer the Domain Names to a registrar account of Lululemon's selection; or that the same domain name registries shall disable the Domain Names and make them inactive and untransferable;

3) Entry of an Order that, upon Lululemon's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Wish.com, and Dhgate (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the LULULEMON Trademarks;

4) That Defendants account for and pay to Lululemon all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the LULULEMON Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

5) In the alternative, that Lululemon be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the LULULEMON Trademarks;

6)  That Lululemon be awarded its reasonable attorneys' fees and costs; and

7)  Award any and all other relief that this Court deems just and proper.

Dated this 20th day of December 2021.          Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Allyson M. Martin
Abby M. Neu
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
amartin@gbc.law
aneu@gbc.law

*Counsel for Plaintiff*
*Lululemon Athletica Canada Inc.*